BOGOVICH, ET AL.,APPELLANTS, v. SCANDRETT, ET AL., RESPONDENTS.

No. 8521
Submitted Feb. 27, 1945. Decided May 9, 1945.
158 Pac. (2d) 637

342

Mr. F. F. Haynes, of Forsyth, and Mr. W. B. Leavitt and Mr. D. L. O'Hern, both of Miles City, for appellants.

Mr. W. L Murphy and Mr. Walter L. Pope, both of Missoula, and Mr. T. W. Carolan, of Forsyth, for respondents.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Appeal from a judgment for defendants in an action for recovery for the alleged wrongful death of James Bogovich, father of the plaintiffs. So far as is material here, the amended complaint alleges that on September 24, 1942, the deceased was driving a team of horses, to which was attached a wagon, on a public highway running in a general north and south direction which crossed the tracks and right of way of the defendant railway company, at a grade crossing maintained by it in the village of Ingomar, Montana; that the view to the west was obscured to one approaching said crossing by tanks, buildings and railroad cars standing upon tracks in close proximity to the west side thereof; that as deceased approached the crossing from the north, he stopped the team near a stop sign, and after having stopped and looked and listened, he

neither saw nor heard any train approaching, and proceeded across the tracks; that the team and wagon in which he was riding crossed two tracks and was crossing the third when the wagon was struck by a train of the defendants, demolishing the same and killing the deceased. It is alleged that the death of the deceased was proximately caused by the negligence of defendants, first, in operating the train at an excessive rate of speed as it approached the crossing; and, second, by the failure to sound the whistle or ring the bell on the locomotive from a point between 50 and 80 rods from the crossing and until reaching the crossing.

A general demurrer to the amended complaint was overruled. The answer denies the negligent acts alleged in the complaint, and alleges that the deceased came to his death by reason of his own negligence in driving onto the crossing in the path of an approaching train; that at the time alleged defendants' freight train was approaching said crossing from the west at a lawful, proper and customary rate of speed, and warnings of its approach were given by ringing the bell and blowing the whistle of the locomotive; that at said time and place the deceased was riding in a sheep wagon drawn by a team of horses; that as he approached the crossing from the north and while yet in a place of safety, signs bearing the words "Railroad Crossing" and "stop 3 Tracks" 25 feet to the north of the crossing, and the approaching train were clearly visible and apparent to the deceased, and said warning signals clearly audible to him; that deceased carelessly and negligently failed to stop at the signs or in a place of safety so as to avoid collision with the train, and, on the contrary, negligently drove said team and wagon upon the main line track in front of the train wtih the collision resulting. It further alleges that if the deceased or plaintiffs suffered any damage, the same resulted from and was directly caused by the contributing fault and negligence of the deceased.

By reply, plaintiffs affirmatively allege that the view was completely obstructed at all places north of the tracks to a

distance of 50 feet; that because of such obstructions it was impossible for deceased to see a train approaching from the west until he had crossed over the first track; that after crossing this track the deceased discovered the approaching train and was caught in a trap and could not and did not have any safe place within which to stop the team and wagon, and in the moment of peril was compelled to proceed as best he could to clear the right of way by continuing to the south across the three tracks. Plaintiffs deny that there was any place of safety after entering upon the first track because of defendants' negligence in obstructing the view and because of the short distance between the three tracks; further allege that the train came upon the crossing at a speed approximately 50 miles an hour without blowing a whistle or ringing a bell and without warning of any kind.

At the commencement of the trial defendants objected to the introduction of any testimony on the ground that the complaint fails to state facts sufficient to constitute a cause of action. At the conclusion of all of the evidence defendants moved for a directed verdict in their favor. The objection was overruled and the motion denied. The jury found the issues in favor of defendants, and judgment accordingly was entered.

The only errors assigned by appellants are the giving of certain instructions over plaintiffs' objection and refusal of one offered instruction. It is contended that by reason of such instructions plaintiffs did not and could not have a fair trial and were virtually instructed out of court.

The trial court gave Instruction 24, as follows: ''You are instructed that if after a full consideration of all the evidence, you believe that the accident resulting in the death of Bogovich was unavoidable, then there can be no recovery in this action and your verdict must be for the defendant. An unavoidable accident is one which occurs despite the exercise of reasonable care as defined in these instructions upon the part of all concerned to avoid it.''

Plaintiffs objected to this on the ground that it was improper

because of lack of evidence to warrant giving it, and that it "practically advises the jury that it gives them the right of speculation on the question of avoidability, and is highly prejudicial to the plaintiffs." It is argued that this injected a new issue into the case, one neither pleaded nor raised during the trial; that it is inconsistent with the theory of the case. and with other instructions, and was prejudicial. No authorities are cited in support of these contentions.

As is usual in actions of this nature, the issues involved are negligence of the defendants and contributory negligence by the deceased. Unavoidable accident is not pleaded as a defense and was not the theory on which the cause was tried by the defendants. A careful reading of the record leads us to the inescapable conclusion that either the deceased or the defendants, or both, were guilty of negligence, and that the accident could have happened only as a result of the negligence of either or both. As above stated, the negligence charged against defendants was operating the train at an excessive rate of speed as it approached the crossing, and failure to ring the bell or sound the whistle on the locomotive from a point between 50 and 80 rods from the crossing. The evidence as to these allegations was conflicting. That of the plaintiff tended to show neither of such warning signals was given as the train approached and reached the crossing, and that the train approached the crossing at a speed of 50 miles per hour. Defendants' evidence tended to show that both warning signals were given as the train approached the crossing, then at a speed of 30 miles per hour.

The evidence tends to show that the view to the west along defendants' right of way was obstructed by several railroad cars standing upon the northernmost of the three tracks west of the crossing, and there is some evidence to show that there were also cars on the middle track; that shortly before the accident the witness Picket was talking with deceased near a water car on the north track, when he heard a train whistle west of town; that after the whistle sounded deceased asked

the witness if a train was coming, to which the witness replied that there was a train coming and it was pretty close; that immediately after being so informed deceased quit filling his water keg, put the keg in his wagon, climbed into the wagon, started the team and drove onto the crossing without stopping. The evidence does not disclose that deceased was deaf, and one witness testified that the noise of the approaching train was audible long before it reached the crossing; that it was audible to her at the moment she observed deceased climb into the wagon near the water car and start to drive toward the crossing, at which moment she was at least as far distant from the train as was the deceased; that it was audible before the wagon started to move. Defendants' evidence tends to show that when the deceased reached a point on the crossing from which the view of the train and the track on which it was approaching was unobstructed he was 27½ feet from the nearest rail of such track, and the heads of his team were about 17½ feet from that rail, at which time the locomotive was at least 340 feet from the crossing. Deceased did not stop but continued, apparently without a change of pace, across the second and onto the third track where he was struck.

Blashfield's Cyclopedia of Automobile Law and Practice, ■ Perm. Ed., sec. 6698, thus states the general rule relative to the giving of an instruction on unavoidable accident:

"Upon proof sufficient to make at least a prima facie case that the casualty in question was the result of an unavoidable accident, the court should instruct the jury upon the law under such circumstances. * * *

"A party is not entitled to an instruction on the theory of an unavoidable accident, in the absence of any evidence upon which to base it, or upon pleadings not raising the issue, such as where both parties charge negligence in their pleadings. Also, where the accident could not have happened without negligence or contributory negligence, it is error to instruct as to an unavoidable accident." (And supporting cases cited.)

Many definitions of "unavoidable accident" have been ap-

proved. Blashfield, supra. In Brewer v. Berner, 15 Wash. (2d) 644, 131, Pac. (2d) 940, 942, the following definition was quoted with approval: ''So employed [in a more restricted sense than inevitable, as an act of God], 'unavoidable accident has been defined as meaning an accident which cannot be avoided by that degree of prudence, foresight, care, and cau tion which the law requires of every one under the circum-stances of the particular case, which is not occasioned in any degree, either remotely or directly, by the want of such care and skill as the law holds every man bound to exercise, or which occurs without fault attributable to anyone. And, in this sense, it has been held to be equivalent to, or synonymous with, 'mere accident' or 'pure accident.' ''

In holding that the giving of such an instruction under the facts there considered constituted reversible error, the court in that case said:

''In the following cases this court has held it proper to give an instruction on unavoidable accident: [Citing cases.]

''An examination of the cited cases discloses that in each of them facts were present relative to an unavoidable accident which would justify the jury in deciding that the accident was the result of unavoidable accident.

''We hold to the view and are of the opinion that an in-struction on unavoidable accident is only authorized when the evidence shows or justifies an inference that an unavoid-able accident has occurred as that term has been defined. In other words, facts must be present in the case on the issues of unavoidable accident, and unless they are so present it is reversible error to give an instruction on that question.

''There was no evidence that the collision between the two cars was the result of an unavoidable accident. On the con-trary, the evidence presented but two questions for the jury to decide, and those questions were negligence on the part of respondent and contributory negligence on the part of appellant.''

In Tanner v. Smith, 97 Mont. 229, 33 Pac. (2d) 547, 549, in

upholding refusal of the trial court to give such an instruction, this court said:

"The court properly refused to give the offered instruction. What is an unavoidable accident? By common acceptation, 'unavoidable accident' means a casualty which happens when all means which common prudence suggests have been used to prevent it. 8 Words & Phrases, First Series, p. 7149, and cases cited [Vol. 43, Words and Phrases, Perm. Ed., Unavoidable Accident.] * * *

"It cannot be said that all means to prevent accident that common prudence, to say nothing of the city ordinances, demanded were observed. There is nothing in the record to characterize the accident as unavoidable. It happened through the fault of some one, and it was the duty of the court to refuse the offered instruction, predicated, as it was, upon a premise not fairly founded upon evidence. 'An instruction postulating facts not shown by the evidence and authorizing indefinite and misleading inferences was properly refused.' " Citing cases. See, also, Stevens v. City of Butte, 107 Mont. 354, 85 Pac. (2d) 339.

Here the evidence discloses no facts justifying a reasonable inference of unavoidable accident. The giving of this instruction improperly injected into the case an issue not supported by either pleading or proof, to plaintiffs' prejudice. We hold that this constituted such prejudicial error as to entitle plaintiffs to a new trial.

Appellants also predicate error in the giving of Instructions 18, 19, 17, 22 and 15, and refusal to give their proposed Instruction 8. Because of our holding that the cause be remanded for a new trial for the reason above stated, it is not necessary to pass upon the specifications of error based upon the other instructions, given and refused. It may be observed, however, that Instructions 18 and 19 appear to be objectionable because of their tendency to direct attention to specific and isolated questions of fact and to confuse and mislead the

jury. On a new trial the parts of these instructions objected to should not be included.

The substance of Instruction 17 is contained in other instructions setting forth the duty of deceased to act as would a reasonably prudent person under the circumstances, and might well be omitted as repetition. While we do not feel that Instruction 22, as to measure of damages, so far as concerns damages for loss of comfort, society, or protection of the deceased, is prejudicially erroneous, we suggest that the wording of a similar instruction approved in Hollingsworth v. Davis-Daly Estates Co., 38 Mont. 143, 99 Pac. 142, is preferable.

Respondents, by thirteen specifications, assign error of the trial court in denying their motion for a directed verdict; in overruling their demurrer to the amended complaint; overruling their objection to the introduction of testimony on the ground that the complaint fails to state facts sufficient to constitute a cause of action; and overruling objections to the admission of certain testimony.

The objection that the amended complaint fails to state facts sufficient to constitute a cause of action is based upon the insufficiency of the allegation of damages; that plaintiffs could only recover special damages which must be specially pleaded.

The allegations of the complaint with reference to damages are to the effect that plaintiffs are the adult son and daughter of deceased, and as such his sole heirs at law; that deceased, at the time of his death, was fifty-six years of age, in good health, and earning $100 per month in addition to his room and board; that by reason of the negligence of defendants, resulting in the death of Bogovich, plaintiffs have been damaged in the sum of $10,000.

We think there may be some question as to whether the evidence of the money gifts and contributions made by deceased to plaintiffs was admissible under the allegations of the complaint. In order to obviate all question on this point, since the cause must be remanded, we suggest that before any re-trial, the trial court allow plaintiffs the privilege of amend-

ing the complaint in this respect. Under the circumstances we are not departing from the rule that a new trial will not be granted to permit a plaintiff to obtain an award of nominal damages only, as announced in Pioneer Mining Co. v. Bannack Gold Mining Co., 60 Mont. 254, 198 Pac. 748 and McCauley v. McKeig, 8 Mont. 389, 21 Pac. 22, because, under the rule stated in Hollingsworth v. Davis-Daly Estates Co., supra, supra, even without this evidence it was the province of the jury to determine whether, and to what extent, plaintiffs were damaged.

Defendants contend that the court should have directed a ██ verdict in their favor on the further ground that the evidence discloses Bogovich was guilty of negligence as a matter of law. After a thorough consideration of the record we cannot say that, when viewed in the light most favorable to plaintiffs, the evidence was insufficient to justify submission of the question of deceased's negligence to the jury, or that from such evidence reasonable men might not draw different conclusions. This was a question of fact, properly left to the determination of the jury.

Defendants assign error by the trial court in overruling ██ their general demurrer to the amended complaint, and overruling their objection to the introduction of any testimony made at the commencement of the trial, on the ground that the complaint does not state facts sufficient to constitute a cause of action. Without passing upon these assignments, suffice it to say that were we to determine that the court erred in either or both instances, it would be our duty, in furtherance of justice, to remand the cause with instructions to sustain the demurrer or the objection and for such further proceedings as might be determined by the trial court as proper and upon such terms as might be just, in accordance with section 9187, Revised Codes 1935.

For the reasons stated the judgment is reversed and the cause remanded for a new trial.

Mr. Chief Justice Johnson and Associate Justices Adair and Angstman concur.

Mr. Justice Morris, (dissenting).

I concede that the giving of instruction 24 was error, but such error does not justify the setting aside of a verdict of the jury which is so clearly grounded upon substantial evidence to the effect that the defendant railway committed no act of negligence, while on the other hand, the deceased chose, in the face of imminent danger, to recklessly attempt to cross the railway tracks in the face of an approaching train.

Even admitting that there was any right of recovery on the part of the plaintiffs, recovery was allowable only on appropriate averments in the pleadings, and the submission of substantial evidence in support thereof. 25 C. J. S., Death, sec 74.

Rehearing denied May 25, 1945.