[Civ. No. 5744.   Fourth Dist.   Dec. 3, 1958.]

PAUL S. McGUIRE, Appellant, v. HAROLD A. NAVARRO, Respondent.

John L. Roberts and Alva D. McGuire for Appellant.

Wilson & Wilson for Respondent.

SHEPARD, J.—Plaintiff sued for damages alleged to arise out of an automobile accident 12 October, 1954, on Highway 91 about 15 miles east of Baker, California. Plaintiff was driving in an easterly direction and defendant in a westerly direction at a bridge equipped with steel guard rails, with the weather clear and dry.

Plaintiff testified to driving his Plymouth automobile at a speed of 50 to 55 miles per hour and defendant testified he was driving his Cadillac automobile at a speed of 60 to 70 miles an hour. Plaintiff apparently contends that the defendant, in attempting to slow down too abruptly while approaching the bridge, lost control of his Cadillac, bumped the steel guard rail on the easterly approach to the bridge, swung sharply across the highway and struck plaintiff's car three or four feet south of the center line of the highway, which would be plaintiff's right-hand side of the highway. The Cadillac, from the point of impact, skidded a further distance of 90 feet toward the west, coming to rest at approximately right angles to the highway facing northerly and astride the south half of the highway. The Plymouth skidded a further distance of 50 feet to where it left the paved highway and continued on soil and sand another 196 feet, making a total distance from impact to point of stoppage for the Plymouth of 246

feet, in a course making an arc. The Plymouth ended up in a position at right angles to the highway and about 65 feet north of the highway. Plaintiff further contends that the sole proximate cause of the accident was the negligence of the defendant in that defendant's speed was excessive, causing him to lose control of his car and thereby run into plaintiff's car.

Defendant apparently contends that while traveling at a speed of 60 to 70 miles per hour at a point about 200 yards east of the east end of said bridge defendant observed a green Cadillac which veered to defendant's side of the road, forcing defendant off the road so that he lost control of the car and causing the accident complained of; that when he first observed the green Cadillac veering to his side of the road he cut off his gas, honked his horn, and about 150 feet from the bridge put on his brakes, veered to his right into the gravel to avoid the green Cadillac, with the ultimate result before mentioned. He says he did not see the Plymouth before he struck it.

Other evidence placed defendant's Cadillac at speeds varying from 60 to 110 miles an hour at a distance 1½ to 2 miles away from the accident. The only evidence of plaintiff's speed, aside from his own testimony, is contained in the distance he traveled after the point of impact. The driver of another car, named Melbourn, arrived a few seconds after the impact but did not see it because of an intervening rise in the road to the east. Melbourn took a number of color pictures which are in evidence. An officer traced skid marks that he saw on the ground and identified a part of these skid marks shown in the pictures as belonging to the defendant's Cadillac, indicating that the point of impact was on the south side of the road. However, during cross-examination of this officer and other witnesses some doubt was cast on the accuracy of this conclusion. Defendant and defendant's wife relate a discussion with plaintiff while en route to the hospital in which plaintiff was said to have remembered following the green Cadillac which defendant contends ran his car off the road. Plaintiff says he has no memory of a green Cadillac and no memory of such a conversation. This is the only evidence as to whether there was or was not a green Cadillac that ran defendant's car off the road. Melbourn says other traffic was meeting him from time to time on the road but identifies nothing in that regard. The green Cadillac, if there was one, never stopped. From a judgment on the verdict for the defendant, plaintiff appeals.

1. Plaintiff first complains that the evidence shows

conclusively that the sole proximate cause of the accident was the negligence of the defendant, and that the trial court was in error in not granting a new trial.

In our opinion, this case is one in which the evidence was sharply conflicting and in which the jury, depending upon their view of the evidence and of the veracity of the witnesses, might have found that the sole proximate cause of the accident was the excessive speed of the defendant, or that the sole proximate cause of the accident was the intervention of an unlawful act by the "green Cadillac" or that the plaintiff's car swerved to the wrong side of the road and was in fact the car which the plaintiff identified as a "green Cadillac," or that the plaintiff was guilty of contributory negligence in that he was traveling at an excessive rate of speed under the circumstances there present (traveling 246 feet from the alleged point of impact as against 90 feet for defendant's car.) We do not wish to be understood as indicating that the evidence does or does not adequately point to any one of these conclusions. We are merely pointing out the possibilities which might have come to the minds of the jurors. ■■ The cases are legion to the effect that weighing the credibility of the witnesses and the weight to be given the testimony are questions in the first instance for the jury, and on a motion for a new trial in the trial court. ■■ A reviewing court will view the evidence in the light most favorable to the respondent and will not weigh the evidence. (*McCarthy* v. *Tally,* 46 Cal.2d 577, 581 [3] [297 P.2d 981]; *Pfingsten* v. *Westenhaver,* 39 Cal.2d 12, 19 [6] [244 P.2d 395].)

■■ 2. Plaintiff next contends that the court committed error in refusing to allow witness Joe Melbourn to testify that at a point between 1½ to 2 miles east of the point of impact defendant, while overtaking and passing witness Melbourn, cut sharply back to the right causing Melbourn and the car that was in front of him to apply their brakes in order to avoid a collision at that time.

The rule in California has been uniform for many years that no hard and fast rule can be laid down governing the admission of evidence of this character, and that its admission is within the sound discretion of the court under all of the facts and circumstances of the case at bar. A reviewing court, in the absence of a clear showing of abuse of discretion, will not set aside the ruling of the trial court. (*Traynor* v. *McGilvray,* 54 Cal.App. 31, 33 [1] [200 P. 1056]; *Ritchey* v. *Watson,*

204 Cal. 387, 390 [3] [268 P. 345]; *Mathews* v. *Dudley,* 212 Cal. 58, 59 [1] [297 P. 544, 298 P. 819]; *Jennings* v. *Arata,* 83 Cal.App.2d 143 [5] [188 P.2d 298].)

In the case at bar the court did permit evidence of the speed at which witness Melbourn estimated defendant to be traveling at the point referred to, but excluded the "cutting in" incident stating that he believed this was an independent incident. In our opinion the trial judge exercised his discretion correctly.

We have read the entire record carefully and, in our opinion, the court's conduct of the case during testimony was meticulously fair, correct, and considerate of both sides.

▇▇▇ 3. Plaintiff's next contention is that the trial court committed reversible error in failing to give an instruction requested by plaintiff covering the basic speed law of the state, which instruction reads as follows:

"The basic speed law of this state, as provided by Section 510 of our Vehicle Code, is as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property. *A violation of this basic rule is negligence.*' " (Italics ours.)

The trial court did give the following instruction at defendant's request:

"The law of this state does not prescribe an absolute speed limit, in terms of so many miles an hour, that was applicable at the time and place of the accident involved in this case. The law does ordain what it calls 'prima facie speed limits,' and the law says that if the speed of a vehicle upon a highway is not in excess of the prima facie limit, such speed is lawful unless clearly proved to be in violation of what is known as the basic speed law; and *if the speed of a vehicle upon a highway is in excess of the applicable prima facie limit, such speed is unlawful unless proved to be not in violation of the basic speed law.* (Italics ours.)

"However, our law further provides that proof of speed in excess of any prima facie limit shall not establish negligence as a matter of law, but that anyone who claims that a speed in excess of such a limit was negligent must, to support such a claim, prove as a fact that such speed was negligent in the circumstances involved.

"The basic speed law to which I have referred provides as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"The prima facie speed limit that was in effect at the time and place of the accident involved in this case was fifty-five miles an hour."

We think it would probably have presented a clearer picture to the jury had the court given that portion of the instruction which was left out, to wit: "A violation of this basic rule is negligence." However, from a reading of all of the instructions we think the jury understood that a violation of the basic speed law, as given to them by the court, was negligence, and in the absence of the erroneous portions of the instructions hereinafter referred to we would not deem this an error of substantially prejudicial character.

However, the use in the instruction which was in fact given of the words "such speed is unlawful unless proved not to be in violation of the basic speed law" has been condemned in numerous authorities in California. In *Anderson* v. *Mothershead,* 19 Cal.App.2d 97, 99 [1] [64 P.2d 995], the court gave an instruction which, similarly to the above quoted instruction, included the substance of the second paragraph of section 511 of the Vehicle Code, and the reviewing court said:

"The action of the court in giving the jury the instructions above quoted was prejudicially erroneous. The rule prevailing in civil actions is set forth in section 513, above quoted. Clearly under this section the burden rested upon plaintiffs to establish as a fact that the vehicle of defendant was operated in a negligent manner. The court erroneously told the jury that this burden rested upon defendant. . . . The trial courts have frequently fallen into error on account of the manner in which the Vehicle Code is worded. It is necessary in order to have a fair trial of the issues in a case like the present one to have the jury clearly instructed so that they will be able to determine whether the proof establishes that the defendant was violating the law or was guilty of negligence."

In *Westberg* v. *Willde,* 14 Cal.2d 360, 369 [7] [94 P.2d 590], the Supreme Court flatly upholds the ruling in *Anderson* v. *Mothershead, supra.* The same rule has been followed without deviation since that time. (*Akers* v. *Cowan,* 26 Cal.App.

2d 694, 696 [2] [80 P.2d 143] ; *Cavalli* v. *Luckett,* 40 Cal.App. 2d 250, 256 [5] [104 P.2d 708] ; *Burch* v. *Valley Motor Lines,* 78 Cal.App.2d 834, 848 [2] [179 P.2d 47] ; *Eslick* v. *Leach,* 135 Cal.App.2d 455, 456 [1] [288 P.2d 38] ; *Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432, 440 [12] [260 P.2d 63] ; *Faselli* v. *Southern Pac. Co.,* 150 Cal.App.2d 644, 648 [2] [310 P.2d 698].)

Respondent refers to the ruling of this court in *Lewis* v. *Doyle,* 149 Cal.App.2d 176 [307 P.2d 965], wherein the total instruction was quoted with approval. However, it must be noted that in that case the precise point here discussed was apparently not under consideration. The points that were in fact under consideration related to the other parts of section 511 and not to that portion here being considered.

■ 4. Appellant next complains that the court was in error in instructing the jury on the subject of contributory negligence. For the reasons discussed in paragraph numbered 1 above, we cannot find that the court was in any error in this respect. In fact, in our opinion, the court would have been in error had it refused to give such an instruction, in view of the condition of the evidence.

■ 5. Appellant's final point is that the court committed error in giving an instruction on unavoidable accident. In the case of *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 658 [6] [320 P.2d 500], decided after the trial of the case at bar, the plaintiff was a passenger in a taxicab and there was a collision between the taxicab and another car, thus there were three parties participant—the passenger-plaintiff, the driver of the taxicab, and the driver of the other car—and it might have been possible for a jury to have taken the view that the accident was caused solely by the negligent conduct of the driver of the other car. Nevertheless, the Supreme Court reviewed the line of authorities culminating in *Parker* v. *Womack,* 37 Cal.2d 116 [230 P.2d 823] and pointed out that the ''so-called defense of unavoidable accident has no legitimate place in our pleading.'' The court further comments:

''The instruction is not only unnecessary but it is also confusing. When the jurors are told that 'in law we recognize what is termed an unavoidable or inevitable accident' they may get the impression that unavoidability is an issue to be decided and that, if proved, it constitutes a separate ground of nonliability of the defendant. Thus they may be misled as to the proper manner of determining liability, that is,

solely on the basis of negligence and proximate causation. The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding." (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500].)

The rule thus laid down has been followed in the cases of *Brenner* v. *Beardsley*, 159 Cal.App.2d 304, 306 [1] [323 P.2d 841]; *Rayner* v. *Ramirez*, 159 Cal.App.2d 372 [324 P.2d 83]; *Scott* v. *Mackey*, 159 Cal.App.2d 690, 693 [324 P.2d 703]; *Britton* v. *Gunderson*, 160 Cal.App.2d 66, 69 [4] [324 P.2d 938]; *Emerton* v. *Acres*, 160 Cal.App.2d 742, 744 [1], [2] [325 P.2d 685]; *Grant* v. *Mueller*, 160 Cal.App.2d 804, 809 [8] [325 P.2d 680]; *Maertins* v. *Kaiser Foundation Hospital*, 162 Cal.App.2d 661, 667 [4b] [328 P.2d 494]; *Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897].

The question then arises as to whether or not the errors in instructions are such as to make necessary a retrial of the issues.

In the failure of the court to give a direct instruction respecting the basic speed law that

"a violation of this basic rule is negligence" we have already ruled that there is no reasonable probability that the jury was seriously misled by such failure, standing alone. However, the other parts of the instructions where the subject was dealt with nowhere made any such direct statement so that the proposition that a violation of the basic speed law would be negligence can only be garnered from putting together many instructions and is nowhere directly impressed on the consciousness of the juror. Thus, the prejudicial effect of the two erroneous instructions must be considered in connection with this failure to directly inform the jury that a violation of the basic speed law is negligence, plus the quantum of overweighted defense instructions.

No less than nine separate instructions dealing in a repetitive way with the burden of proof being on the plaintiff to establish the negligence of the defendant were given, and at least 10 different instructions dealt in a repetitiously negative way with the contention that defendant was negligent. Additionally, in five instructions the subject of contributory negligence was dealt with. With the exception of the two instructions specifically noted on speed and unavoid-

able accident, we think all the instructions were correct as to individual form. However, the quantum was repetitiously favorable to defendant, a fact which normally would be given little consideration but which needs to be given some thought when weighing the whole subject of whether or not the error spoken of was prejudicial.

The evidence in the case was sharply conflicting and the jury's views could have gone either way. In this state of the case, with the quantum of instructions negativing plaintiff's case, with no clear and direct announcement by the court that a violation of the basic speed law is negligence, we are forced to the conclusion that the erroneous instructions hereinbefore pointed out may very probably have affected the jurors' thinking and the resultant verdict.

The judgment is reversed and the case is remanded for a new trial.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied December 23, 1958, and respondent's petition for a hearing by the Supreme Court was denied January 28, 1959.